T.C. Memo. 1996-547


UNITED STATES TAX COURT


70 ACRE RECOGNITION EQUIPMENT PARTNERSHIP, BOOTH CREEK
INVESTMENT, INC., TAX MATTERS PARTNER, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 6558-91.                    Filed December 18, 1996.


<u>William R. Cousins III</u>, <u>Joel N. Crouch</u>, and <u>Josh O. Ungerman</u>, for petitioner.

<u>Alvin A. Ohm</u> and <u>Abbey B. Garber</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


FOLEY, <u>Judge</u>:  By notice of final partnership administrative adjustment dated January 8, 1991, respondent determined adjustments to items claimed on 70 Acre Recognition Equipment Partnership's 1983 return.  Unless otherwise indicated, all

section references are to the Internal Revenue Code for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. After concessions, the sole issue for decision is whether Booth Creek Investment, Inc., and State Savings and Loan Association of Lubbock formed a valid partnership for tax purposes. We conclude that they did.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. At the time the petition was filed, the principal place of business of 70 Acre Recognition Equipment Partnership was in Dallas, Texas.

Booth Creek Investment, Inc. (BCI), was a corporation formed under Texas law. Its primary activity was the purchase of real estate for immediate resale. BCI participated in the booming Texas real estate market of the early 1980's, and it executed transactions quickly and frequently. BCI engaged in numerous joint purchases of real estate, and written partnership agreements were not always executed.

In 1982, BCI became interested in purchasing approximately 70 acres of real estate (the 70-Acre Tract) from Recognition Equipment Inc. (REI). On December 23, 1982, BCI and REI entered into an agreement entitled "CONTRACT OF SALE" whereby BCI agreed to purchase, and REI agreed to sell, the 70-Acre Tract. Consistent with its past investment strategy, BCI intended to quickly develop and sell the property for substantial profit.

The purchase price was agreed to be $4.30 per square foot multiplied by the property's total square feet. The contract provided that REI would finance part of the contract price and that the remainder would be paid in cash.

BCI needed to raise funds to pay the cash portion of the purchase price. It approached Leonard Thomas, a real estate agent and mortgage broker, to locate a party willing to finance a portion of the acquisition. Mr. Thomas brought BCI and State Savings and Loan Association of Lubbock (State Savings) together. He previously had been hired by State Savings to find profitable real estate investments for the institution. Mr. Thomas had arranged 20 to 30 such investments for State Savings. After the closing of each deal, Mr. Thomas monitored the investment on behalf of State Savings.

State Savings was wholly owned by Terry Barker. When Mr. Barker acquired it, the institution was experiencing severe financial difficulties. Mr. Barker had no previous experience in the savings and loan industry and often complained about regulatory restrictions on the ability of a savings and loan institution to participate in the business dealings of its clients. In a bid to earn profits and save the institution, Mr. Barker arranged for State Savings to finance numerous real estate transactions in which the institution shared the profits.

By commitment letter dated March 18, 1983, State Savings offered to finance the least of (1) $6,400,000, (2) the appraised

value of the 70-Acre Tract, or (3) 100 percent of actual development costs.  In exchange, State Savings required (1) repayment with interest calculated on a floating rate with a 14-percent floor and (2) a 50-percent interest in net profits from the sale of the 70-Acre Tract.  By separate letter on the same date, State Savings offered to purchase the 70-Acre Tract and give BCI a 50-percent interest in net profits in the event that State Savings could not lend the necessary funds to BCI and BCI was otherwise prepared to purchase the land.

On March 25, 1983, the purchase of the 70-Acre Tract closed. On the same date, BCI sold 25 acres of the 70-Acre Tract (the 25-Acre Tract) for $6,950,978 in cash.  The remaining 45 acres were never sold by BCI.  Some of the funds from the sale of the 25-Acre Tract were applied to closing expenses, and the remainder was used to satisfy the cash portion of the 70-Acre Tract purchase price.  BCI purchased the 70-Acre Tract for $13,228,021 and took title solely in its name.  It paid $6,334,514 in cash and issued two nonrecourse promissory notes payable to REI for the balance.  The promissory notes were secured by a deed of trust on part of the 70-Acre Tract, and Hal Pettigrew, BCI's president and founder, personally guaranteed payment.

Also on March 25, 1983, BCI issued a promissory note payable to State Savings in exchange for a $1,800,000 nonrecourse loan. This amount was later increased to $2,830,000.  The funds were necessary to build roads and install utilities on part of the 70-

Acre Tract.  The promissory note provided for calculation of interest and repayment by BCI on or before a specific date.  It was secured by a deed of trust in favor of State Savings.

On July 11, 1984, an information return was filed for the 1983 tax year in the name of 70 Acre Recognition Equipment Partnership.  The return indicated that the sale of the 25-Acre Tract had produced a $2,587,365 short-term capital gain.  Schedules K-1 (Partner's Share of Income, Credits, Deductions, etc.) attached to the return allocated 50 percent of the short-term capital gain to BCI and the other 50 percent to State Savings.  BCI reported its share of the short-term capital gain on its corporate income tax return.

On January 8, 1991, respondent issued a notice of final partnership administrative adjustment.  In it, respondent reduced the short-term capital gain to $2,170,571.  Respondent determined, however, that BCI and State Savings had not formed a valid partnership for tax purposes.  As a result, respondent allocated 100 percent of the gain to BCI.

## OPINION

Section 761(a) defines a partnership as including "a syndicate, group, pool, joint venture or other unincorporated organization through or by means of which any business, financial operation, or venture is carried on, and which is not * * * a corporation or a trust or estate."  See also sec. 7701(a)(2).  Whether a partnership exists for tax purposes is determined under

Federal law. Hensel Phelps Constr. Co. v. Commissioner, 74 T.C. 939, 947-948 (1980), affd. 703 F.2d 485 (10th Cir. 1983). In determining whether a partnership has been formed for tax purposes, the Supreme Court in Commissioner v. Culbertson, 337 U.S. 733, 742 (1949), held that the inquiry is:

> whether, considering all the facts--the agreement, the conduct of the parties in execution of its provisions, their statements, the testimony of disinterested persons, the relationship of the parties, their respective abilities and capital contributions, the actual control of income and the purposes for which it is used, and any other facts throwing light on their true intent--the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise. * * * [Fn. ref. omitted.]

The determination of whether the parties intended to enter into a partnership is a question of fact. See Commissioner v. Tower, 327 U.S. 280, 287 (1946).

A joint venture has been defined as a special combination of two or more persons, where in some specific venture a profit is jointly sought without any actual partnership or corporate designation. Beck Chem. Equip. Corp. v. Commissioner, 27 T.C. 840, 848 (1957). The partnership analysis set out in Culbertson is equally applicable to determining whether a joint venture exists. Luna v. Commissioner, 42 T.C. 1067, 1077 (1964). As a result, we must determine whether State Savings and BCI intended to, and did, join together in the present conduct of such an enterprise.

As a preliminary matter, we consider respondent's contention that petitioner's agent Coopers & Lybrand has admitted the nonexistence of a valid partnership.  In a letter to respondent, Coopers & Lybrand stated that they agreed with respondent's determination that BCI and State Savings had not formed a valid partnership.  This letter represents nothing more than an accountant's conclusion after applying law to facts.  We must conduct our own analysis.

Representatives of BCI and State Savings testified that they intended to form a partnership at the time of the transaction, and we found them to be highly credible witnesses.  The parties agreed that BCI would contribute real estate expertise and manage the property, while State Savings would make funds available for the acquisition or development of the 70-Acre Tract.  In addition, the partnership filed contemporaneous information returns and issued Schedules K-1.

Respondent contends that State Savings contributed nothing of value to the partnership.  Petitioner contends, however, that the parties to the transaction considered State Savings' commitment to make funds available a contribution of a valuable service.  The Supreme Court has indicated that the services or capital contributed by a partner need not meet an objective standard.  See Commissioner v. Culbertson, supra at 742-743.  The Court further stated:

> If, upon a consideration of all the facts, it is found that the partners joined together in good faith to conduct a business, having agreed that the services or capital to be contributed presently by each is of such value to the partnership that the contributor should participate in the distribution of profits, that is sufficient.  The Tower case did not purport to authorize the Tax Court to substitute its judgment for that of the parties; it simply furnished some guides to the determination of their true intent.  * * * [Id. at 744-745.]

We believe that, in the unique circumstances of this no-cash, quick-turn-around real estate transaction, the parties agreed that State Savings' commitment to stand ready to make necessary loans was a service of sufficient value to warrant its inclusion in a partnership.  Having made this determination, we will heed the Supreme Court's directive and decline to substitute our judgment for that of the parties.  The parties intended to, and did, enter into a partnership valid for tax purposes.

The March 25, 1983, commitment letter from State Savings to BCI, wherein State Savings promised to purchase the 70-Acre Tract if State Savings could not make the requisite loans, supports our conclusion.  In effect, each party to the transaction stood ready to (1) take title to the land and (2) share the profits equally with the other partner.  This willingness on the part of State Savings to bear the risks associated with ownership removes it from the realm of the ordinary lender.

Respondent contends that a number of factors preclude a finding that BCI and State Savings entered into a partnership valid for tax purposes.  First, respondent emphasizes the absence

of a written partnership agreement as evidence that no partnership was formed.  Petitioner correctly states, however, that the law does not require a written partnership agreement. See, e.g., Ayrton Metal Co. v. Commissioner, 34 T.C. 464, 472 (1960), affd. in part and revd. in part 299 F.2d 741 (2d Cir. 1962); cf. Commissioner v. Culbertson, supra at 736 (concerning an oral partnership agreement).  Second, respondent contends that State Savings did not contribute capital or services of sufficient value to warrant its inclusion in a partnership.  We have concluded, however, that in the unique circumstances of this case, BCI valued State Savings' provision of credit.  Third, respondent emphasizes the lack of documentary evidence supporting the existence of a partnership.  In light of both parties' rather casual methods of operation, together with Mr. Barker's attitude toward applicable regulatory restrictions, the paucity of documentation in this case is not surprising.  Fourth, respondent contends that no document conferred on State Savings the right to jointly manage the 70-Acre Tract (and later the remaining 45 acres).  State Savings, however, delegated day-to-day management and development responsibility to BCI and supervised the venture's progress through Mr. Thomas.  Given BCI's expertise in developing real estate, we do not consider this arrangement unusual.  Fifth, respondent emphasizes that State Savings did not agree to share in losses.  Sharing of losses, however, is not required.  See McDougal v. Commissioner, 62 T.C. 720, 725 (1974).

In short, respondent fails to consider the highly unusual facts and circumstances of this case. Neither party was required to contribute cash for the purchase of the 70-Acre Tract. The gain from resale of part of the 70-Acre Tract was realized on the same day it was purchased. Documents were executed in the name of only one partner for the sake of administrative convenience. State Savings was purposefully recognized as a partner by BCI in consideration of the performance of a valuable service (i.e., making credit available for the transaction).

Accordingly, we hold that BCI and State Savings formed a partnership valid for tax purposes. As a result, the partnership properly allocated 50 percent of the gain realized from the sale of the 25-Acre Tract to State Savings.

We have considered all other arguments made by petitioner and respondent and found them to be either irrelevant or without merit.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for petitioner</u>.